STATE OF MAINE
*vs.*
REYNALD A. COUTURE, APPELLANT

York.    Opinion, July 20, 1960.

*Donald P. Allen,* for Applt.

*Marcel J. Viger, County Attorney,* for the State.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

DUBORD, J. This case, argued at our May 1960 Term, is before us upon an appeal from the denial of a motion for a new trial filed by Reynald A. Couture, after a conviction in the Superior Court within and for the County of York for his alleged escape from the County Jail in violation of Section 28, Chapter 135, R. S., 1954.

Under the provisions of Rule 8 of the Rules of Court, relating to Appellate Procedure For Indigent Defendants In Criminal Cases (now Rule 15 of Maine Criminal Rules), an abbreviated record was prepared for the use of this court and in the record is contained a stipulation of facts signed by counsel for the State and for the respondent. The chronology of events appears to be as follows:

Reynald A. Couture having pleaded guilty in the Superior Court of York County to the crime of breaking, entering and larceny in the nighttime, was ordered committed to the Reformatory for Men at Windham, in the County of Cumberland. A mittimus directed to the Sheriff of the County of York, or any of his deputies, dated March 1, 1957 was handed to the Sheriff and the prisoner immediately taken into custody and placed in the County Jail for the County of York, pending his transfer to the Reformatory for Men at Windham. In the mittimus is included this clause: "We therefore command you, the said Sheriff or any of his deputies, *forthwith* (emphasis supplied) to convey the said Reynald A. Couture to the State Reformatory for Men aforesaid, and him deliver to the Superintendent thereof." No emergency existed at the time such as sickness, quarantine or impassability of roads. The Reformatory is located about 20 miles from the County Jail in Alfred, Maine. The prisoner was not transported immediately to the Reformatory, but was held in the County Jail from March 1, 1957 to March 6, 1957. The reason given by the Sheriff for failure to take him to the Reformatory earlier was that he and his deputies were busy investigating other

criminal matters throughout the county. It is stipulated that there were 38 or 40 deputies on the Sheriff's staff.

On March 6, 1957, while the turnkey was held by a prisoner, the doorway to the cell block was opened and several prisoners left the jail. Couture was seen leaving the side door to the jail with other prisoners. He was captured and returned to the jail within a few hours. On March 8, 1957, he was transferred to the Reformatory and delivered to the Superintendent.

At the May 1957 Term of the Superior Court within and for the County of York, the grand jury returned an indictment against Couture charging him with escape in violation of Section 28, Chapter 135, R. S., 1954. It is stipulated that no copy of the indictment was sent to Couture while he was in the Reformatory, and that he had no knowledge of the existence of the indictment until December 31, 1957, when he was arrested on a capias issued on the indictment by the Superior Court of York County. It is also stipulated that at no time between the May 1957 Term of the Superior Court and the January 1958 Term was any counsel appointed by the court to represent the respondent.

At the January 1958 Term, counsel was appointed by the court to represent the respondent and a copy of the indictment was furnished to him.

Prior to his arraignment, counsel for the respondent filed a motion to quash the indictment. This motion alleged in substance that the indictment was inadequate because of insufficient allegations and that the respondent had been denied his constitutional right to a speedy trial. The motion to quash was denied and exceptions noted and allowed. These exceptions were not prosecuted.

Counsel for the respondent then filed a plea in abatement, praying that the indictment be dismissed for the reason that the constitutional rights of the respondent had

been violated in that he had not been furnished with a copy of the indictment, and that he was denied his right to a speedy trial. The plea was dismissed. To this ruling the respondent excepted. These exceptions were allowed, but were not prosecuted.

The respondent then entered a plea of not guilty and before trial, counsel made a statement for the record to the effect that the constitutional rights of the respondent were being reserved and not waived. Upon trial, the respondent was found guilty and sentenced to serve not less than two and one-half years nor more than five years in the State Prison, and committed in execution thereof.

The respondent then filed a motion for a new trial and upon denial of the motion, he took an appeal, which is now before us.

The reasons alleged by the respondent in support of his appeal are substantially as follows:

(1) The verdict is against the law because the respondent was not informed of the nature of the charge against him by the furnishing of a copy of the indictment, and that he was denied a speedy trial, all in violation of his constitutional rights.

(2) Because the verdict is against the evidence in that he was not being lawfully detained as specified in Section 28, Chapter 135, and thus could not be guilty of the crime charged.

(3) That the verdict was against the weight of the evidence in that the respondent did not escape as alleged, and

(4) The charge of the presiding justice does not include a definition of what constitutes a waiver by the respondent of his constitutional rights.

It has frequently been held by this court that on appeal, in a criminal case, the issue is whether, in view of all the

evidence, the jury was warranted in believing beyond a reasonable doubt the guilt of the respondent. This rule has so often been repeated that citation of authority appears to be unnecessary.

A study of the stipulated facts relating to the issue of the alleged escape convinces us that the evidence was such that the jury, in the light of instructions given them by the presiding justice, was warranted in believing, beyond a reasonable doubt, the guilt of the respondent. If that were all there is to the case, we might well stop at this point. In an ordinary criminal case, when this court is satisfied that the evidence supports a verdict of guilt, there is no reason to invoke the doctrine previously propounded that errors of law, improperly presented, may be considered upon an appeal, when injustice may result, if counsel has not seen fit to attack an inadequate indictment in accordance with the regular rules of criminal pleading. However, a careful study of the record convinces us that manifest errors exist and injustice will result unless these errors are examined upon this appeal. Authority for such procedure on the part of this court is abundant.

> "In our practice, in civil cases, errors of law are not as a general rule open to review on a motion for a new trial directed to this court. The same general rule applies to statutory appeals in criminal cases. The appropriate practice is to present such errors to this court in a Bill of Exceptions, and a departure from this practice is not to be encouraged.

> "In civil cases, however, an exception to this general rule has been recognized, and where, and only where, manifest error in law has occurred in the trial of cases and injustice would otherwise inevitably result, the law of the case may be examined upon a motion for a new trial on the ground that the verdict is against the law, and the verdict, if clearly wrong, set aside.

"The same exception must be recognized in the review of criminal appeals. In this state the principles applicable to the review of civil trials on a general motion govern appeals in criminal cases." *State* v. *Wright*, 128 Me. 404, 406; 148 A. 146; *State* v. *Hudon*, 142 Me. 337, 52 A. (2nd) 520.

The proper procedure to test the adequacy of an indictment is, of course, by filing a demurrer before trial. If the demurrer is overruled, a respondent may take exceptions and prosecute those exceptions in this court; or he may wait until after a finding of guilt and file a motion in arrest of judgment, and if overruled, the same method of relief, by way of exceptions, is afforded to the respondent.

In the instant case, counsel for the respondent filed a motion to quash the indictment. Such a motion is addressed to the discretion of the court and is not exceptionable, unless abuse of authority is shown. *State* v. *Mallett*, 123 Me. 220, 122 A. 570.

While it has been generally held, as previously pointed out, that no exceptions lie to the refusal of the court to quash an indictment, it would seem that perhaps there is an exception to this rule where a motion to quash is filed in cases where the respondent contends that his constitutional rights were violated. See *State* v. *Slorah*, 118 Me. 203, 106 A. 768. In any event, the exceptions were not prosecuted.

Counsel for the respondent, in his motion for a new trial alleges as grounds for a new trial reasons which cannot ordinarily be considered under such procedure. In his motion, among other grounds not ordinarily heard under a motion for a new trial, counsel attacks the charge of the justice, in relation to what constitutes a waiver of constitutional rights by one charged with crime.

If counsel for a respondent objects to any portion of the charge of the justice, correct practice is to have his exceptions noted to designated portions of the charge and prose-

cute his exceptions in this court. Likewise, if counsel for a respondent is of the opinion that the charge of the justice is insufficient, it is his duty to request that the court charge the jury in accordance with his conceptions of the applicable law, and if these instructions are refused, the respondent may protect his rights by taking exceptions and prosecuting the same. This procedure was not followed by counsel for the respondent.

Nevertheless, as we have previously stated, because of the fact that grave injustice may result unless these different questions are examined, we have concluded to make such an examination.

There are the following points for consideration:

(1)    The sufficiency or insufficiency of the indictment.

(2)    The lawfulness of the detention of the respondent at the time of his alleged escape.

(3)    The question of whether or not the constitutional rights of the respondent were violated, and if so, whether or not he waived such violation; and

(4)    Whether or not certain portions of the charge of the justice were erroneous and prejudicial to the respondent.

Section 6, Article I of the Constitution of Maine provides that in all criminal prosecutions, the accused shall have the right to demand the nature and cause of the accusation and have a copy thereof; and to have a speedy, public and impartial trial.

We first give consideration to the issue of the sufficiency or insufficiency of the indictment.

The statute which the State contends the respondent violated is Section 28, Chapter 135, R. S., 1954, and reads as follows:

238

"Whoever, being lawfully detained in any jail or other place of confinement, except the state prison, breaks or escapes therefrom, or attempts to do so, shall be punished, etc."

"The very foundation of the crime of escape is the lawful confinement of the prisoner; and therefore, it is a well-established rule that when the imprisonment is unlawful the reason which makes flight from prison an offense does not exist." 19 Am. Jur., Escape, § 10.

See also 30 C. J. S., Escape, § 5.

"The indictment or information must charge every necessary ingredient of the offense with reasonable certainty." 30 C. J. S., Escape, § 25 (b) (1).

"An indictment or information for escape should aver facts from which the lawfulness of the custody of the prisoner may appear." 30 C. J. S., Escape, § 25 (b) (2a).

"One of the essentials of a lawful detention in a jail is that the commitment thereto be made by lawful authority. That is an essential traversable fact which must be established by the state to make out a prima facie case. * * * * * The indictment fails to show upon its face any facts from which the lawfulness of the commitment may be determined. It does not show by whom or by what authority the commitment was made. There is not even a direct allegation that he was *lawfully* committed. Although the indictment follows the language of the statute and alleges the escape 'while being then and there lawfully detained in the Cumberland County Jail,' this allegation is not sufficient. It sets forth no facts from which the lawfulness of the detention may be determined. Nor is it aided by the allegation with respect to the commitment. That allegation neither alleges its lawfulness nor sets forth any facts from which its lawfulness may be determined. In passing it may be noted that the indictment does

not even allege that the detention was by virtue of and under the commitment." *Smith, Petr.*, v. *State of Maine,* 145 Me. 313, 318; 75 A. (2nd) 538.

"An indictment or information against a prisoner for effecting his escape should show the original cause of imprisonment, and by what authority he was delivered into custody—so that the lawfulness of the custody will appear—and that the prisoner did escape and go at large." 7 Ency. Pl. & Prac. 914. See also 2 Chitty's Crim. Law (5th Am. Ed.) 159. 1 Russell on Crimes, 430.

"The Indictment (for escape) will in detail vary with the form of the offence; and, if statutory, the particular terms of the statute; and with the special facts. But it must contain such a setting out that the custody under which the defendant was held and its lawfulness will appear, on its face showing the escaping or breaking away to be a crime. It may then charge that then and there the defendant, so being in the lawful custody of etc, 'out of, etc, unlawfully did escape'." 2 Bishop New Crim. Procedure, Sec. 943.

Studied in the light of the law applicable to indictments for escape and particularly the principles laid down by our own court in *Smith, Petr.* v. *State of Maine, supra,* the indictment upon which this respondent was sentenced is woefully inadequate. True, the indictment recites that the "escape occurred while the respondent was lawfully detained in the County Jail at said Alfred." However, as pointed out in the case of *Smith, Petr.* v. *State of Maine, supra,* unless sufficient facts are alleged to show the lawfulness of the detention, an allegation that the escapee was "lawfully detained" is but the statement of a legal conclusion so far as the lawfulness of the detention is concerned. The indictment goes on to recite in detail that the respondent had been sentenced to a term in the Reformatory for Men; that he had been ordered by the presiding justice to be com-

mitted in execution of said sentence, and that said respondent, pending commitment to the Reformatory for Men was being held in the County Jail in Alfred. There is no allegation to the effect that a mittimus had been issued to authorize the detention of the respondent. In the charge of the justice it is noted that he instructed the jury that it could be considered as an established fact, that the respondent was delivered to the Sheriff pursuant to a mittimus, but the indictment does not say so.

While the statute in existence at the time of the rendition of the opinion in the *Smith Case* has been since repealed and superseded by a differently worded statute, the principles of pleading set forth are applicable to the amended statute.

Based upon the rules relating to pleadings in cases of escape, expounded by this court, the indictment is faulty and should have been quashed by the presiding justice. A demurrer to the indictment, if filed, should have been sustained, and judgment should have been arrested on proper motion filed therefor.

Was the detention of the respondent at the time of the alleged escape lawful? He had been committed to the Sheriff under a mittimus which commanded that he be *forthwith* delivered to the Superintendent of the Reformatory for Men at Windham.

"It is an integral principle in our system of law and government that ministerial officers assuming to execute a statute or process upon the property or person of a citizen shall execute it promptly, fully and precisely." *State* v. *Guthrie,* 90 Me. 448, 450, 38 A. 368; *Hefler* v. *Hunt,* 120 Me. 10, 14, 112 A. 675.

"One who has been convicted and sentenced to imprisonment in the penitentiary should not be detained unreasonably in the county jail or else-

where by the sheriff; but he should deliver the convict to the proper authority as soon as he can do so. What is a reasonable or an unreasonable time to detain the prisoner before delivering him to those who are his custodians during the term of his imprisonment depends on the circumstances of each particular case. If the prisoner is too sick to be removed, or if he has been exposed to a contagious disease, his detention until he can be removed thereto safely is not unreasonable." 24 C. J. S., Criminal Law, § 1621.

Section 32, Chapter 27, R. S., 1954, provides for the method of delivery of male persons convicted and sentenced to the State Prison. There does not seem to be any statutory provision relating to the transportation and delivery of prisoners sentenced to the Reformatory for Men.

In giving consideration to the issue of the reasonableness of the time in which Couture was detained in the County Jail, the question of when his sentence to the Reformatory for Men was to begin is of importance. The law seems to be that the term of a sentence begins with the first day of actual incarceration after delivery of the prisoner to the Warden or Superintendent of the penal institution to which a prisoner has been sentenced.

"The time when the term begins will depend on the circumstances of the case as considered in the light of local practice and applicable statutes, but it is ordinarily deemed to begin with the first day of actual incarceration." 24 C. J. S., Criminal Law, § 1995 (b).

That it is recognized in this State that a sentence begins when a prisoner is received in the institution to which he has been sentenced is indicated by Section 47, Chapter 27, R. S., 1954, relating to sentences in the State Prison. There seems to be no similar statute relating to sentences in other penal institutions.

This court in a very recent opinion of *State* v. *Blanchard,* 156 Me. 30; 159 A. (2nd) 304, 317, recognized the principle that a sentence does not begin until commitment of the prisoner to the institution wherein the sentence will be served.

> "In the case of Oxman v. United States, 8 Cir., 148 F. 2d. 750, 159 A.L.R. 155, after the defendant had been convicted, he was sentenced to imprisonment, and was placed temporarily in a room in the marshal's office close by the courtroom, awaiting action on certain co-defendants. Before being removed to the place at which his sentence was to be served, he was called back into court. The original sentence was revoked and a new sentence imposed. It was the contention of the defendant that when he was placed in this room, he had already begun to serve his sentence and, therefore, the court was without power to alter it. It was held that such temporary detention was not a beginning of the execution of his sentence."

> "In holding that the period during which the probationer was in the custody of the probation officer could not be counted as time during which he was undergoing punishment imposed upon him, the Supreme Court of Vermont said In re Hall, 100 Vt. 197, 136 A. 24:

> " 'The execution of his sentence did not come into operation until his commitment, after the finding by the court that the terms and conditions of his probation had been violated.' " *State* v. *Blanchard, supra.*

It is stipulated that no emergency existed, such as sickness, quarantine or impassibility of roads. The Reformatory was only twenty miles away. The State advances as a reason for failure of the sheriff to remove the prisoner to the Reformatory earlier that his staff of 38 or 40 deputies were busy investigating crime throughout the county. We are not impressed with this reason.

It is not the function of this court at this time, to determine the reasonableness of the delay. This was a matter within the discretion of the court which should have been exercised at the time, and this discretion is subject to reversal on appeal only in the event of its abuse.

See State v. *Guthrie, supra,* where the court said:

> "What is a reasonable time within which the service of such a warrant can lawfully be made is also a question of law for the court."

In his charge, the presiding justice properly instructed the jury that when a prisoner is delivered to a sheriff with the mittimus commanding that he be removed forthwith to the penal institution to which he has been sentenced, that the sheriff may place such person within a county jail or other appropriate place and keep such person for a reasonable time thereafter. He further instructed them correctly that if such prisoner is kept by the sheriff for a reasonable time that the detention is lawful, but that if the detention extends beyond a reasonable time, such detention then becomes unlawful.

He then instructed the jury that the question of the reasonableness of the detention was one of fact for their determination. We quote the following excerpt from his charge upon this point:

> "I instruct you that you may properly consider in determining the reasonableness of the detention the exigencies of the situation as they relate to the traveling conditions, distance the respondent is to be conveyed, the accessibility of transportation, that there was or was not a plague existing in the area of the Reformatory or in the Reformatory itself, and further you may properly consider that the officer or officers to whom the mittimus was directed were or were not occupied with duties so that conveyance of the respondent in accordance with the directive contained in the

mittimus at a time prior to that time at which the respondent was actually conveyed could not be accomplished without an unreasonable interference with duties which were then and there being performed by the officer to whom the mittimus was directed, or the officers to whom the mittimus was directed.

"If you find as a fact that the detention in the County Jail was reasonable under all the circumstances, then I instruct you as law that escape from such detention would constitute an escape from a lawful detention."

When the case was submitted, the jury was asked to answer this question: "Was such detention reasonable under the circumstances?"

In view of the fact that the issue of the reasonableness of the detention is a matter of law for the court, this instruction was erroneous. As a result of the procedure adopted, authority was actually given to the jury to determine when the sentence of this prisoner to the Reformatory was to start. This is a prerogative not vested in a jury. We are of the opinion that the propounding of this question was prejudicial to the respondent.

Were the constitutional rights of the respondent violated, and if so, did he waive such violation?

The respondent says his rights were violated in that he was not given a speedy trial and that the presiding justice did not properly instruct the jury upon the question of waiver.

It is fundamental law that a person charged with crime is guaranteed a speedy trial by the Constitution. This constitutional guaranty extends to all persons accused of crime; and a person accused of crime is entitled to a discharge or dismissal, if his right to a speedy trial is violated.

"No general principle fixes the exact time within which a trial must be had to satisfy the requirement of a speedy trial. The right to a speedy trial is necessarily relative; it is consistent with delays, and whether such a trial is afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion. It is generally said that a speedy trial is one had as soon after indictment as the prosecution can with reasonable diligence prepare for it, regard being had to the terms of court." 22 C. J. S., Criminal Law, § 467 (b) (3).

"Constitutional guaranties of the right of accused to a speedy trial are, as is stated in Constitutional Law § 59, self-executing, and if his right is violated accused is entitled to be discharged or to have the proceedings dismissed." 22 C. J. S., Criminal Law, § 468.

"While there is some authority to the contrary, the general rule is that a demand for trial, resistance to postponement, or some other effort to secure a speedy trial must be made by accused to entitle him to a discharge on the ground of delay." 22 C. J. S., Criminal Law, § 469.

It seems that the proper method for raising the question of violation of the right to a speedy trial is by motion addressed to the court at which the indictment is pending.

"Accused must show that there has been a delay; that the delay was caused by the state and not by him; and that the trial has not been postponed on his application, or with his consent; * * * * . When accused has made this proof, the burden is then on the state to prove that good cause existed for delay, * * * ." 22 C. J. S., Criminal Law, § 470 (b).

The motion to quash and the plea in abatement filed by the respondent in this case may well be considered adequate to reach the violations of constitutional rights claimed.

"The right of the accused to a discharge for the failure of the prosecution to put him on trial within the required time may be waived by his own conduct, even in capital cases. He must claim his right if he wishes its protection. Silence on his part cannot be construed as a demand for trial." 14 Am. Jur., Criminal Law, § 138.

"But the right of the accused to have a speedy trial may be waived by his own conduct. He must claim his right if he wishes for its protection. If he does not make a demand for trial, he will not be in a position to demand a discharge because of delay in prosecution." *State* v. *Kopelow,* 126 Me. 384, 386; 138 A. 625.

Section 11, Chapter 148, R. S., 1954 provides that "The clerk shall, without charge, furnish to any person indicted for a crime punishable by imprisonment in the state prison, a copy of the indictment."

Section 9, Chapter 148, R. S., 1954 provides that "Any person in prison under indictment shall be tried or bailed at the next term after the finding thereof, if he demands it, unless the court is satisfied that some of the witnesses on the part of the state have been enticed away or detained from court by some cause beyond their control; and all persons under indictment for felony, if they have been arrested thereon, shall be tried or bailed at the 2nd term after the finding thereof. Any person indicted, although he has not been arrested, is entitled to a speedy trial, if he demands it in person in open court."

Presumably the foregoing provisions are designed to implement the general provisions of the Constitution guaranteeing a speedy trial. See *State* v. *Slorah, supra.*

A study of Section 9, Chapter 148, indicates that its provisions are not specifically applicable to the instant case. For example, the first sentence reads: "Any person in prison under indictment shall be tried or bailed at the next

term after the finding thereof if he demands it, etc." The respondent in this case was not in prison by virtue of the indictment against which he now complains, but was serving a sentence for another offense. Manifestly, he could not demand a trial because he did not know he was under indictment.

Then we find the following sentence: "and, all persons under indictment for felony, if they have been arrested thereon shall be tried at the 2nd term after the filing thereof." The respondent had not been arrested under the indictment and was not arrested until nearly eight months after the indictment was returned and it is stipulated that during all that time he had no knowledge of the existence of the indictment. The last sentence of Section 9, Chapter 148 reads: "Any person indicted, although he has not been arrested is entitled to a speedy trial, if he demands it, in person, in open court." Not only was the respondent unaware that an indictment had been returned against him, but he could not appear in court to demand trial, because he was serving a sentence for another offense in the Reformatory.

> "One serving a sentence in the penitentiary is entitled to a speedy trial of other crimes with which he is charged." 22 C. J. S., Criminal Law, § 467 (b) (1).

While there is no provision of law which says that the Clerk is under a duty of furnishing one charged with crime with a copy of the indictment, where no request therefor has been made, we are of the opinion that under the facts existing in this case, there was a duty on the part of the officials to inform the respondent that an indictment was pending against him, so as to give him an opportunity, if he desired to do so, of requesting a copy of the indictment and demanding an immediate trial. It can readily be seen that long delay, such as existed in this case, might well be prejudicial to a person charged with crime, because during

the interval existing between the time of the return of the indictment and the time when such person learns of its existence, witnesses essential to his defense might have died or become otherwise unavailable. We feel that the constitutional rights of this respondent were violated.

Now, what of a waiver thereof?

Upon the question of violation of constitutional rights and waiver thereon, the presiding justice instructed the jury as follows:

> "Whether or not there was a violation of the rules of fair play as I have described them to you, whether or not, in other words, there was a violation of the due process provisions of the Constitution is a question of fact which I submit to you for your determination. Whether or not there was a waiver of the rights which were accorded this and all respondents is a question of fact which I submit to you for your determination under these instructions which I have given you."

Pursuant to these instructions, the following question was propounded to the jury. "Did the respondent waive his right to a speedy trial?"

These instructions of the learned justice below were erroneous and the question improperly propounded, because the issue of violation of constitutional rights and waiver thereof are questions of law to be decided by the court within its discretion.

Moreover, if the question of whether or not the respondent had waived his rights to a speedy trial, was properly asked, then the jury was wrong in giving an affirmative answer, because according to the stipulated facts, the respondent was not aware that there was an indictment pending against him and manifestly could not waive any rights, either by silence or otherwise. These instructions were prejudicial to the respondent.

We give no further consideration to the fourth issue raised by the respondent relating to certain portions of the charge of the justice, because we have already elaborated upon this matter in reference to the other issues, the answers to which we have resolved.

We are satisfied that the respondent was convicted and has been serving a sentence under a defective indictment; that the question of the reasonableness of the delay in delivering the respondent to the Superintendent of the Reformatory for Men was not an issue for the determination of the jury; that the constitutional rights of the respondent were violated; and that the question of waiver, was not an issue to be decided by the jury, and, in any event, the affirmative answer given by the jury was erroneous.

The respondent is entitled to a new trial.

The entry will be:

*Appeal sustained.*

*New trial granted.*