STATE of Maine

v.

Thomas MORTON.

Supreme Judicial Court of Maine.

Aug. 9, 1972.

Foahd J. Saliem, County Atty., Augusta, for plaintiff.

Sanborn, Moreshead & Schade by Charles E. Moreshead, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

On June 17, 1970 in the Superior Court of Kennebec County the Defendant was

convicted of Uttering a Forged Instrument and on that same day he was sentenced to a term in the Maine State Prison. He filed a notice of appeal the next day and was granted a stay of execution of his sentence on June 25. On July 26 he escaped from the County Jail where he was still being held.

Defendant was apprehended and indicted and convicted by a jury of the crime of escape from jail (17 M.R.S.A. § 1405) and sentenced to a term in Prison for this offense. Through his court appointed attorney, the Defendant has attacked this conviction as invalid for three reasons which we will discuss in order.

1. The Defendant contends that "[t]he Appellant's constitutional rights were violated when he was detained in the Kennebec County Jail without the Sheriff or his duly authorized representative having in his possession an order or document from the Court stating the grounds on which Appellant was being detained at said jail."

At the time of the Defendant's escape from jail the Sheriff did not have in his possession any document, either original or copy, which constituted an order from the Court directing him to hold the prisoner. The Defendant argues that the Sheriff having no such order in his possession was without authority to detain the Defendant and that, therefore, one of the essential elements of the crime of escape—a lawful detention—was not present. We are convinced that possession of such a document by the Sheriff is not required by due process, our statutes or our Rules.

In Smith, Petr. v. State, 145 Me. 313, 75 A.2d 538 (1950), the Court held that a Defendant charged with escape was entitled to have the lawfulness of his detention for a criminal offense alleged and proved. (The words "for any criminal offense" have since been deleted from the statute.) The Court found that the indictment for

escape failed to allege sufficiently these elements and sustained Smith's appeal from the denial of the writ of error.

In State v. Couture, 156 Me. 231, 163 A.2d 646 (1960), the Court found that the indictment which charged that the Defendant had been sentenced to the Reformatory for Men and was being held in the County Jail pending commitment to the Reformatory failed to allege a lawful detention.

Since *Couture* and *Smith* we have decided a series of appeals from convictions for escape in which the appellants attacked the lawfulness of their detentions by seeking to demonstrate that their original convictions were invalid. In Beaulieu v. State, 161 Me. 248, 211 A.2d 290 (1965) we said that whether the original conviction was or was not erroneous, the conviction and commitment under it were in force at the time of escape and the prisoner was therefore lawfully detained. In Hamner v. State, Me., 223 A.2d 532 (1966); Collins v. State, Me., 262 A.2d 443 (1970); Chapman v. State, 250 A.2d 696 (1969) and Wark v. State, Me., 266 A.2d 62 (1970) we reiterated this position saying that the prisoner's right was to test the validity of his original conviction and confinement by judicial procedure but not collaterally in defending on the escape charge. In *Hamner*, we said:

"When the Legislature conditioned the crime of escape upon a lawful detention, it did not intend to thwart the legitimate enforcement of the criminal law by any so-called check-right of self-judgment and self-help. It proceeded from the theory that all should yield obedience to lawful authority." Hamner v. State, supra, 223 A.2d at 535.

The Defendant Morton does not here attack his original conviction.[1] His defense to the charge of escape is his contention that he was not lawfully detained in jail because there was no written order from

---

1. His appeal from the original conviction was heard and denied. State v. Morton, Me., 290 A.2d 371 (1972).

the Court directing his detention there or, if there was such an order, the Sheriff did not have it in his possession.

The Defendant was no more entitled to use self-help to free himself from what he now contends was an unlawful detention than were Hamner, Collins, Chapman and Wark.

However, if Morton had yielded obedience to lawful authority and had attacked his detention pending appeal by habeas corpus, he still could not have succeeded in gaining his freedom on the basis of the non-possession by the jailor of a document ordering his detention.

We have held prior to the adoption of our present Rules of Criminal Procedure that the authority of the jailor to detain the prisoner is not defeated by the fact that the jailor holds a defective mittimus or even by the fact that he has no mittimus at all. The defective mittimus may be corrected or the missing order of commitment may be supplied by presentation of the record of the proceedings. Fuller v. State, Me., 282 A.2d 848 (1971); Austin v. State, 158 Me. 292, 183 A.2d 515 (1962); Duncan, Petr. v. State, 158 Me. 265, 183 A.2d 209 (1962). In *Duncan*, although the statutes then required that prisoners shall not be received at the Maine State Prison until a warrant of commitment is given to the receiving officer, we held that the failure to allege that such a warrant of commitment had issued did not invalidate the detention.

"This statute, in our view, is designed to aid in the administration and government of the prison. If a prisoner duly convicted and sentenced is in fact received without the delivery of the mittimus and other records, the imprisonment is none the less lawful. So here, if there was no mittimus in fact issued, nevertheless, the facts alleged show that the imprisonment was lawful. Thus an essential element under section 42 was met in the indictment." Duncan, Petr. v. State, supra at 273–274, 183 A.2d at 214.

We recently examined such a situation in *Fuller* and concluded that under our new Rules of Criminal Procedure, as before their adoption, the lawfulness of the detention is to be determined from the entire record and not from the Order of Commitment alone.

While this issue does not specifically raise the question of whether the Court *had* validly ordered the Defendant confined, it is clear from the facts that he had been placed in the Sheriff's custody by Court order and he remained there by operation of law until his escape.

Following the Defendant's conviction and sentence on June 17, 1970, this discussion took place:

"DEFENDANT'S TRIAL COUNSEL: Your Honor, the Defendant has indicated that he wishes to appeal. Would it be proper to ask to have bail set pending appeal?

THE COURT: I usually require some formal notice of appeal to be filed before I recognize the existence of appeal. The mere filing of a formal notice of appeal, as you know, Mr. —, is merely a very brief notice of such an intention. I will indicate at this time that when such a formal notice of appeal is filed, that this Court will order a stay of execution of sentence, and bail will be fixed in the amount of five thousand dollars.

As I understand it, you have ten days in which to file notice of appeal."

The following day the Defendant did file a formal notice of appeal which also included a request that the execution of his sentence be stayed, that he be admitted to bail "as may be set by the Court", that counsel be appointed to represent him on appeal and that the Court order the record prepared at State expense.

The Defendant's trial counsel had evidently prepared on the bottom of the page an order for the Court to sign reading:

"GRANTED: Record ordered printed and a hearing be had on counsel."

The Justice signed this order, struck out the words "and a hearing be had on counsel" and inserted in longhand the appointment of the Defendant's present counsel on appeal.

Neither the order nor the docket entries (which reflect appointment of counsel and preparation of the record) mention that bail was fixed pending appeal.

No bail was furnished by Defendant.

Whatever the Defendant's particular status was as to bail during trial, upon his conviction he was then in the custody of the Court. Upon being sentenced that day he was ordered into the custody of the Sheriff who was directed to remove him to the Maine State Prison without needless delay. Inasmuch as the Defendant had orally indicated his intention to file a formal notice of appeal and to request a stay of execution, the fact that the Defendant was still in the County Jail the next day when the notice of appeal and request for stay of execution were filed does not suggest needless delay on the part of the Sheriff.

Whether a Defendant will be admitted to bail pending his appeal lies in the discretion of the Presiding Justice and unless and until a convicted Defendant who has elected not to commence service of his sentence is admitted to bail the law requires that he be detained by the Sheriff to await final decision on his appeal. 15 M.R.S.A. § 1701; M.R.Crim.P., Rules 38(a) (1) and 46(a).

The Presiding Justice had stated unequivocally that when a formal notice of appeal was filed bail would be fixed in the amount of $5,000.00.

We are familiar with the practice of Justices of the Superior Court to make conditional orders which are to be made effective upon compliance with certain conditions, without further action by the Justices. The great volume of work at term time necessitates such procedures in matters which are later to be carried out by court personnel. It is not inappropriate to fix the amount of bail in this manner in instances such as this. We consider that bail had here been fixed by the Court in this manner. It seems likely that the Defendant's trial counsel also considered that bail had been fixed as the order prepared for the Justice's signature contained no provision for fixing the amount of bail.

We conclude that the Defendant was properly in the custody of the Sheriff when he escaped on July 26. He had been ordered into the Sheriff's custody for removal to the Prison, he had appealed and execution of his sentence had been stayed before he was removed, bail had been fixed for his release pending decision on his appeal and he had not furnished the bail. While orderly administration of the judicial process indicates the desirability of the Sheriff's being furnished with a copy of an order for the detention of a person placed in his custody by the Court, the measure of his authority to detain is the legality of the detention as revealed by the record—not his possession or lack of possession of a written order.

2. The Defendant contends that the Justice erroneously refused to give the Defendant's requested instruction which read:

"The Order of Commitment and/or Stay of Execution of the Defendant to the County Jail must be in writing and the original or an attested copy must be in the possession of the Sheriff or his duly authorized representative when the Defendant is committed to Jail and while he remains in Jail."

For reasons which we have just discussed we are convinced that the existence of a specific written order by the Court directing the Sheriff, upon the appeal and stay of execution, to hold the prisoner in the jail until he furnished bail for his release pending his appeal—although desirable pro-

cedure—was not essential to a lawful detention. The detention followed the appeal and stay of execution by operation of law.

The Justice was not in error in refusing to give the requested instruction.

3. The Defendant's final claim of error was that "[t]he Court erred in its charge to the jury when it stated that the jury might find the defendant guilty if satisfied beyond a reasonable doubt either that the defendant was in custody for failure to provide bail or that he was in custody because he was denied bail, due to the fact that the indictment stated that Appellant was lawfully detained in the Kennebec County Jail for failure to provide bail."

The indictment charges:

"That Thomas Morton of Belfast in the County of Waldo and State of Maine, on or about the twenty-sixth day of July A.D.1970, at Augusta, in the County of Kennebec and State of Maine, while then and there being lawfully detained in the Kennebec County Jail at said Augusta for a criminal offense, to wit, Uttering a Forged Indorsement, having been convicted of said offense and having been sentenced by Harold J. Rubin, Presiding Justice, Kennebec County Superior Court, on June 17, 1970, to a term of not less than two and one-half years nor more than seven years at Maine State Prison, located at Thomaston, which said offense was within the jurisdiction of said court, and stay of execution having been granted after notice of appeal to the Law Court on June 18, 1970, and bail set by the court in the amount of $5,000, and the said Thomas Morton then and there being lawfully detained in the Kennebec County Jail for failure to provide said bail, while being so detained, did then and there, on the said twenty-sixth day of July A.D.1970, willfully, unlawfully and feloniously escape from and out of said Kennebec County Jail at said Augusta and go at large."

The Defendant agrees that the indictment clearly sets forth that the Defendant was at the time of his escape detained at the County Jail for failure to provide bail which had been set by the Court. He argues, however, that the Justice instructed the jurors that it was not necessary that they be satisfied that this allegation had been proved. The Justice said to the jury:

"I am going to instruct you that his detention would be lawful either if he was confined by the Court without bail or if the bail had been set and he had failed to provide bail. And I am going to instruct you that it is not essential that the State prove which of these alternatives—excuse me—it is not essential that the State prove that he was confined in default of bail, as long as you are satisfied either that he was confined in default of bail, or that he was denied bail."

■ The offense of escape from jail consists of the prisoner's intentional unauthorized departure from a jail in which he was lawfully detained. Whether the prisoner made an unauthorized departure from a jail in which he was detained are issues of fact which the Justice properly submitted to the jury. Whether the detention was a *lawful* detention was a question of law for the Court.

Whether the Justice's statement of June 17 constituted a fixing of bail and whether the detention was lawful were questions of law for the Court. In his instructions, the Presiding Justice was in fact telling the jury that it was the jury's duty to determine whether there was an intentional unauthorized departure from the jail by a prisoner entitled to freedom only if he furnished bail, and that the legal status as to the fixing of bail and the lawfulness of the detention were for the Court to determine.

■ When the Justice submitted only the issues of departure to the jury he was in fact ruling as a matter of law that the de-

tention was lawful and that bail had been fixed. We agree with the Justice as to these rulings. The instruction was not erroneous.

Appeal denied.