STATE OF MAINE, By Indictment,

*vs.*

ALLIE BLAISDELL.

Kennebec County.    Opinion January 15, 1919.

*Indictments.    General rule to be applied in the construction and interpretation of
penal statutes.    R. S., Chap. 130, Sec. 1, as amended by Public Laws, 1917,
Chap. 126, interpreted.*

The indictment charges that the respondent, on the twenty-sixth day of August,
in the year one thousand nine hundred eighteen, did knowingly, wilfully, and
feloniously defile and corrupt the waters of a certain spring, the waters of which
spring were then and there used for domestic purposes, by then and there
digging into and stirring up the bottom and sides of said spring with a stick.
The State claims a violation of the provisions of R. S., Chap. 130, Sec. 1, which
was amended by Chap. 126, Public Laws, 1917.

The record clearly shows that the respondent did stir up the mud and earth com-
posing the sides and bottom of the spring, but did no other act by which the
waters of the spring were disturbed or changed with respect to their purity.

The issue presented raises the question whether the acts proved to have been done
by the respondent constituted a defilement or corruption of the water within
the meaning of the statute.

*Held:*

1.    That words in a statute are to be taken in their common and popular sense
unless the context shows the contrary.

2.    In view of the language used to define the felony and the severe punishment
imposed, the intent of the legislature was to prevent the introduction into
domestic waters, of some foreign, impure, poisonous substance which would
change those waters from a sound to a putrid or putrescent state, which would
taint them, which would vitiate them physically and render them dangerous or
perhaps deadly for domestic use.

3.    That the acts proven against the respondent did not constitute the crime
defined by the statute.

Indictment for violation of the provisions of R. S., Chap. 130, Sec. 1,
as amended by Chap. 126, Public Laws, 1917.    After verdict of
guilty, respondent filed certain exceptions to the rulings of presiding
Justice.    Judgment in accordance with opinion.

Case state in opinion.

*William H. Fisher*, County Attorney, for State.

*Williamson, Burleigh & McLean*, for respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

PHILBROOK, J. This case comes before us upon exceptions, several in number. After the testimony for the State was submitted in the trial court the respondent moved that the presiding Justice direct a verdict in her favor on the ground that the State's evidence was insufficient in law to warrant a conviction. This motion having been denied an exception was allowed. This exception involves interpretation of the statute under which the indictment was drawn and our conclusions upon this exception render examination of the other exceptions unnecessary.

The indictment charges that the respondent, on the twenty-sixth day of August, in the year one thousand nine hundred eighteen, did knowingly, wilfully, and feloniously, defile and corrupt the waters of a certain spring, the waters of which spring were then and there used for domestic purposes, by then and there digging into and stirring up the bottom and sides of said spring with a stick. The State claims a violation of the provisions of R. S., Chap. 130, Sec. 1, which was amended by Chap. 126, Public Laws, 1917. The amendment enlarges the offense from a misdemeanor to a felony and was in force when the act complained of was committed. While the rule requiring strict construction of penal statutes was more rigorously applied in former times, when the number of capital offenses was more than one hundred and sixty, yet the rule still obtains, and is so well recognized that citation of authorities is unnecessary. And the rule is equally well established that "the degree of strictness applied to the construction of a penal statute depends in great measure upon the severity of the statute." Endlich on the Interpretation of Statutes, Sec. 334. As a corollary to this rule it follows that a statute declaring an act to be a felony calls for more strict construction than one which declares an act to be a misdemeanor.

The amended statute, for the violation of which the respondent was convicted, reads thus: "Whoever knowingly and wilfully poisons, defiles, or in any way corrupts the waters of any well, spring, brook,

lake, pond, river or reservoir, used for domestic purposes for man or beast, or knowingly corrupts the sources of any public water supply, or the tributaries of said sources of supply in such manner as to effect the purity of the water so supplied, or knowingly defiles such water in any manner, whether the same be frozen or not, or puts the carcass of any dead animal or other offensive material in said waters, or upon the ice thereof, shall be punished by a fine not exceeding five thousand dollars, or by imprisonment for any term of years." The severity of this statute may be better appreciated when we contemplate that it is greater than those defining and imposing punishments for manslaughter, mayhem or assault with intent to murder. It should therefore be interpreted with a degree of strictness commensurate with its severity. The statute enumerates different acts which may constitute the crime charged against the respondent, but the indictment selects from those acts and charges, as we have already seen, that she defiled and corrupted the waters of the spring in question by digging into and stirring up the bottom and sides of the said spring with a stick. An examination of the record discloses, from the testimony of the only eye witness of the acts of the respondent, that she had a stick about four feet long, and perhaps two by three inches as to the other dimensions, with which she was stirring up the water of the spring and thus making it very roily. There was no testimony that the stick held any foreign, deleterious, or poisonous substance or matter on its surface. In short the testimony fails to disclose the introduction into the water of any substance or thing except this stick. Was this act a defilement or corruption of the water within the meaning of the statute under consideration. We have searched in vain for judicial definition of the words "corrupt" and "defile" when used in a criminal statute as they are employed in the act under contemplation. We therefore first observe the rule that words in a statute are to be taken in their common and popular sense, unless the context shows the contrary. *State* v. *Cumberland Club,* 112 Maine, 196. Turning to standard lexicographers we find the verb "corrupt," in Webster's new International Dictionary, to be defined thus: "To change from a sound to a putrid or putrescent state; to putrify; to taint," while the same authority says that "to defile" is "to pollute." The Standard Dictionary defines the verb "corrupt" thus: "To cause to become putrescent or putrid; to change from good to bad in any quality; to contaminate," and gives synonymous meaning to

the verb "to defile." The Century Dictionary defines the verb "corrupt" thus: "To vitiate physically; to change from a sound to a putrid or putrescent state," while the same authority defines "to defile" as meaning "to make unclean; to befoul." We also observe the rule which is paramount in the construction of statutes, namely, that not only the intent but the policy of the legislature should be ascertained and adopted. *State* v. *Kaufman,* 98 Maine, 546.

We take judicial knowledge of the fact that the legislature, by its amendment above referred to, regarded the subject of such importance that the emergency clause of the constitution was invoked to hasten its enactment and effect. Could it have been the intent and policy of that body to impose so drastic and severe a punishment upon one who merely stirred, with a clean stick, the natural soil which lined the sides and bottom of a spring whose waters chanced to be used for domestic purposes. Was it not rather, in view of the language used to define the felony and the severe punishment imposed, the intent and policy of that body to prevent the introduction into domestic waters, of some foreign, impure, poisonous substance which would change those waters from a sound to a putrid or putrescent state, which would taint them, which would vitiate them physically and render them dangerous or perhaps deadly for domestic use. We think these questions are self-answering.

An interesting case, not on all fours with the case at bar to be sure, but supporting our attitude, is *State* v. *Mitchell,* 35 S. E., 845, coming from the Supreme Court of Appeals of West Virginia. In that State a section of the Code prohibits the knowing and wilful throwing into domestic used waters of "any dead animal, carcass or part thereof, or any putrid, nauseous or offensive substance," and declares the act to be punishable as a misdemeanor. The court held that the statute, being penal, should be construed strictly and literally, that no person is to be made subject to it by implication, and all doubts concerning its interpretation are to preponderate in favor of the accused. In that case the respondent threw sawdust and saw mill waste into water used for domestic purposes. The court said "The statute imposes imprisonment, and is highly penal, imposing loss of liberty, and odium; and I may reasonably ask, did the legislature intend to visit this severity of punishment in every instance of casting sawdust into streams,—a practice so long prevalent in this State. . . . The evidence does not prove that the sawdust is putrid, nauseous, or

offensive. The most the evidence does show is that in time of drought the sawdust discolors and produces an apparent ooze. . . . That is not the offense created by the statute."

Many citations might be made to cases on the civil side of procedure, where injunctions were sought by water companies or individuals to prevent throwing noxious or poisonous substances into waters used for domestic purposes, but even in those cases, with their more liberal interpretation of statute, we find nothing to support the position taken by the State in the case at bar.

In view of the testimony introduced by the State, as applicable to the statute under consideration, we are of opinion that the respondent's motion should have been granted and the exception to the refusal to so do should be sustained.

The mandate will be, therefore,

> *Exception to denial of motion to direct verdict in respondent's favor sustained. Other exceptions not considered.*