STATE OF MAINE

*vs.*

HOWARD ARTUS.

STATE OF MAINE

*vs.*

FRED BUNKER AND HOWARD ARTUS.

Penobscot.　Opinion, September 22, 1945.

348

*John H. Needham,* County Attorney, for the State.

*Louis Villani,* for the respondents.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MURCHIE, J. These cases were certified to the Chief Justice pursuant to appropriate provision in the amended charter of the Bangor Municipal Court. Private & Special Laws 1895, Chap. 211 (Sec. 6). One charges the respondent Artus with buying and selling "two deer skins, without being licensed so to do by the Commissioner of Inland Fisheries and Game." The other charges both respondents with transporting "two deer, or parts thereof" from Milo to Bangor "not open to view,

and not tagged and plainly labelled with the name and residence" of two named persons and "not being accompanied" by said persons. Each of them had a legal right, admitted on behalf of the State, to dispose of the skins which are the subject matter of the first complaint and are described as parts in the second. The cases were submitted for decision in the Municipal Court on a single Agreed Statement of Facts. Whether the admitted acts of the respondents constitute the crimes charged is certified to this Court, prior to the imposition of sentences, following rulings that they are guilty. Similar questions have been submitted heretofore on agreed facts. *State* v. *Montgomery*, 92 Me., 433, 43 A., 13; *State* v. *Cohen*, 133 Me., 293, 177 A., 403.

The facts are that the respondent Artus operates a store, butcher shop and garage in Milo; that he transports butchered animals and the parts thereof, "including hides," to Bangor; that two residents of Milo, acting separately, each left a deer skin with him in Milo; that he transported the skins to Bangor in a load which included the hides of other types of animals; that the skins were tagged with the names of the persons who left them with Artus; that those persons did not accompany the load; that Artus left skins and hides at a place of business in Bangor; that the skins were purchased there and registered by the purchaser as having been sold by the persons whose names appeared on the tags; that Artus collected for the skins and hides in a single check payable to him which included $1.50 for one skin and $1.25 for the other; that he paid $1.25 and $1.00 to the persons aforesaid and retained 25 cents out of the proceeds of each skin for himself; and that he was not licensed to buy and sell deer skins. The respondent Bunker drove the vehicle which transported the skins and hides, as an employee of Artus, but is not otherwise involved.

The offense charged against Artus alone is that he bought and sold the deer skins. It is argued by the State that he vio-

lated R. S. 1930, Chap. 38, Secs. 93 and 95, as amended. Our Inland Fish and Game Laws, as in effect at the time of the alleged offenses, are found in the Seventh Biennial Revision thereof in the volume which contains the Public Laws of 1943. Citations of them hereafter will be by section number only. The sections above cited relate exclusively to deer, their skins (or hides), heads and parts. Section 93 provides for licensing residents to buy and sell deer skins and heads. It contains no reference to hides or parts. Section 95 prohibits the sale of deer or parts except that heads and hides may be sold to taxidermists and dealers. The claim of the State is that delivering the skins to Artus constituted sales of them under rules laid down in the Uniform Sales Act, R. S. 1930, Chap. 165, for ascertaining the intention of parties as to when the property in goods sold passes to a buyer. See Section 19 of the Act, now contained in R. S. 1944, Chap. 171. The provisions thereof are controlled by the opening words which indicate that the rules established are to be applied when no "different intention appears." The agreed facts are not that the persons who had a legal right to dispose of the deer skins delivered them to Artus or intended to sell them to him or that he intended either to buy or sell them. Recitals are that those persons "brought" the skins to Artus; that he "left" them in Bangor. The records of the purchaser there indicate that the sales were made by the persons who had a legal right to dispose of the skins. There is no statement in the agreed facts which negatives an intention on the part of each and every person involved that Artus should act and was acting as agent or bailee. The registration of the sales, presumably made in accordance with license requirements, shows that to have been the intention or understanding of the purchaser. The facts are as consistent with agency or bailment as with sale. See 8 C. J. S., 234, Par. 3 e; *Frye* v. *Burdick et al.*, 67 Me., 408. Artus is not chargeable with having either bought or sold the deer skins.

The case against the respondent Bunker must fail. There is no suggestion of any knowledge on his part that the truck he drove as an employee of Artus was carrying the deer skins. He did not help load them and if the allegations of the complaint are true they were not exposed to view while being transported. There is nothing to show either that he knew or that he should have known of their presence in his load. The case is clearly distinguishable from *State* v. *Goodenow et al.*, 65 Me., 30 and *State* v. *Huff*, 89 Me., 521, 36 A., 1000, where the persons whose convictions were under review knew what they were doing but did not know that their acts were criminal. Driving a truck is not unlawful unless its load, or a part thereof, is being transported unlawfully. There can be no intent to transport on the part of a driver who has no knowledge of the contents of his load. The action of Bunker is comparable with that which both of the cited cases imply would not have been criminal.

Artus transported the deer skins. If it was unlawful to do so his guilt under the complaint alleging that fact is established. This involves the question whether the skin of a deer is a part thereof within the purview of the pertinent statute and the particular requirements which must be complied with to make the transportation of deer and their parts lawful. The State relies on Sections 67 and 82. Section 67 prohibits the transportation of deer and parts, with an exception not here material, unless they are exposed to view, clearly tagged with the name and address of the person who killed the deer and accompanied by that person. This section is controlling. Section 82 relates to the transportation of game animals and game birds without reference to their parts. It imposes the same requirements except on the part of common carriers. The requirements are cumulative. The transportation of deer or parts is lawful only when all are met. Failure to comply with any one or more or all of them constitutes the offense made

punishable by the statute. *State* v. *Burgess et al.*, 40 Me., 592; *State* v. *Lang et al.*, 63 Me., 215; *State v. Haskell*, 76 Me., 399; *State* v. *Willis*, 78 Me., 70, 2 A., 848; *State* v. *Stanley*, 84 Me., 555, 24 A., 983; *State* v. *Trowbridge*, 112 Me., 16, 90 A., 494. The persons who killed the deer did not accompany the skins. This is enough although it may be noted that recital that the skins were tagged with tags bearing names implies that they did not bear addresses and that the omission to state that the skins were exposed to view implies that allegation to the contrary in the complaint is true. The acts of Artus constitute the crime charged if Section 67 is applicable to deer skins.

This issue is not free from doubt notwithstanding the recital in the Agreed Statement that Artus was engaged in the business of transporting animals and the parts thereof, "including hides," and the implication that a skin or hide is a part in Section 95 where hides are excluded from the operation of the word "parts." The Fish and Game Laws contain many references to parts of both animals and birds. Section 42 deals with a fur-bearing animal or part; Section 55 with migratory birds or parts. Sections 60 and 61 regulate hunting and refer to the parts of animals of several species. Sections 66 and 67 deal with the transportation of deer and parts. The skin or hide of an animal and the plumage of a bird are undoubtedly parts thereof within the generally accepted meaning of the term. Yet Section 58 relates to part of the plumage, skin or body of birds and Sections 61 B and 61 B 2, P. L., 1941, Chap. 200, declare that one killing a protected animal under designated conditions shall dress the carcass and care for the meat and may become the owner of the carcass. They do not use the words "part" or "parts." The provisions of Sections 68 and 69 relative to the parts of deer clearly contemplate such parts as constitute meat for consumption as food.

Section 92 authorizes the licensing of taxidermists and provides that fish, game or parts may be transported to them.

The only reference to transportation in Section 93 is that deer skins bought and sold by licensed dealers shall be transported under rules made by the Commissioner of Inland Fisheries and Game. Section 94 provides for licensing persons to buy the skins of fur-bearing animals, with no provision for the transportation of them. To hold it illegal for one having a right to sell a skin to transport it to a licensee for sale would render his right of small value and make licenses to buy skins worthless unless their holders became itinerant buyers traveling to the homes of persons lawfully possessed of skins. A contrary holding will accord with rules of construction that have received general recognition, i. e. that the several sections of a statute may be considered together in seeking to determine legislative intention, *State* v. *Frederickson,* 101 Me., 37, 63 A., 535, 6 L. R. A. (N. S.) , 186, 115 Am. St. Rep., 295, and that criminal and penal statutes should be strictly construed, *Case of Waldo T. Pierce,* 16 Me., 255; *State* v. *Kaufman,* 98 Me., 546, 57 A., 886. These support the view, to quote the latter, that laws should receive an interpretation

> "most favorable to the innocence of the citizen, and most agreeable to reason and justice,"

which is perhaps but a rephrasing of declaration in the former that when

> "the liberty of the citizen is involved, the statute should be construed strictly, and should not be made to embrace any doubtful case."

To construe the word "part" in Section 67 as not intended to include skins or hides finds support in the history of legislation on the subject matter. R. S. 1883, Chap. 30 was completely rewritten by P. L. 1899, Chap. 42. It declared closed

seasons on moose, deer and caribou in Sections 9, 10 and 12 and made the possession or transportation of a carcass, hide or part illegal except in an open season in Sections 11 and 13. As somewhat corresponding sections appear in the 1899 law killing and possession are commonly treated but the word "hide" is omitted: Sections 17, 18 and 23. Since 1899 laws regulating the killing, possession and transportation of deer use the word "part," sometimes in the plural, but neither of the words "skin" nor "hide." See P. L. 1901, Chap. 222, Sec. 18; R. S. 1903, Chap. 32, Secs. 17 and 25; P. L. 1913, Chap. 206, Secs. 27, 28, 29, 32, 33 and 37; R. S. 1916, Chap. 33, Secs. 36, 37, 38, 41, 42 and 44; P. L. 1919, Chaps. 37, 131 and 196, Secs. 7, 10, 11 and 12; P. L. 1929, Chap. 331, Secs. 24, 25, 30 and 31; the Biennial Revisions of our Fish and Game Laws, and the session laws consolidated therein which have amended any of the enactments cited. Had earlier legislation referred to deer, or carcasses, and hides the use of the word "parts" in substitution for the latter might have indicated intention to apply a more inclusive term but when a law specifically naming both hides and parts is amended by striking out one of the two words there is clear implication of a restrictive purpose. This is borne out by the fact that the 1899 legislation made the first provision known to our law for licensed dealing in deer skins, Chap. 42, Sec. 28, with no reference to their transportation and no language excepting them from the operation of Section 23. Then, as ever since, dealers were required to register dates of purchase and identities of sellers but there was no requirement involving addresses. This refinement first appeared in P. L., 1933, Chap. 69. If it should be argued that dealers became obligated thereby to travel to sellers rather than have skins transported to them the answer is that it is not manifest in the simple change made in the law. It would be forcing construction to so hold. We determine that the word "part" as used in R. S. 1930, Chap. 38, Sec. 67, as amended, does not include a

skin being carried from one having the right to dispose of it to another licensed to buy it and that the acts of Artus do not constitute the crime with which he is charged.

> *Exceptions sustained.*
> *Cases remanded to the Bangor*
> *Municipal Court for entry of*
> *judgment for the Respondents.*