**STATE of Maine**

**v.**

**Augustus F. HEALD.**

Supreme Judicial Court of Maine.

July 10, 1974.

Foahd J. Saliem, Asst. Atty. Gen., Augusta, for State.

Logan & Kurr, by John F. Logan, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On October 22, 1970 a Penobscot County jury found defendant, Augustus F. Heald, guilty of having been an accessory before the fact to a robbery. Pending imposition of sentence, defendant was committed to the Penobscot County Jail from which on October 23, or 24, 1970 he "escaped." [1] Defendant was subsequently apprehended and in January of 1971 was indicted by the Penobscot County Grand Jury for the crime of "escape from the Penobscot County Jail" in violation of 17 M.R.S.A. § 1405.[2] The indictment read:

"That on or about the 24th day of October, 1970, in the County of Penobscot, and State of Maine, AUGUSTUS F. HEALD, then and there lawfully detained in the Penobscot County Jail, the said AUGUSTUS F. HEALD having been found guilty of the crime of being an accessory before the fact to robbery by a jury at the September Term of the Penobscot County Superior Court on October 22, 1970, and Harold Rubin, Presiding Justice of the September Term of the Penobscot County Superior Court, having continued the matter day to day for sentencing and having set bail at Ten Thousand Dollars ($10,000) with two sureties, and AUGUSTUS F. HEALD having been committed on October 22, 1970 to the Penobscot County Jail for failure to provide bail as established by the said Harold Rubin, did then and there willfully, unlawfully and feloniously from and out of said jail escape and go."

Defendant pleaded not guilty and waived trial by jury. In July of 1971, after a hearing before a Justice of the Superior Court, defendant was adjudicated "guilty" and sentenced to one and one-half to five years in the Maine State Prison. Defendant appealed from the judgment of conviction.

---

1. Defendant was last seen in his jail cell at approximately 6:00 P.M. on October 23, 1970. At 6:00 A.M. the next morning it was discovered that he was gone.

2. 17 M.R.S.A. § 1405 provides:
   "Whoever, being lawfully detained in any jail or other place of confinement, except the State Prison, breaks or escapes therefrom, or attempts to do so, shall be punished by imprisonment for not more than 7 years. The sentence to such imprisonment shall not be concurrent with any other sentence then being served or thereafter to be imposed upon such escapee. Whoever resists apprehension or breaks arrest shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 11 months."

While defendant's appeal was in process Richard W. Cox, the Official Court Reporter who had "taken" defendant's trial, died before he had made a transcript of the proceedings. The prosecutor learned that another Official Court Reporter, Preston B. Rand, was able to read a set of papers purporting to be Mr. Cox's stenographic notes of defendant's trial. Accordingly, pursuant to 4 M.R.S.A. § 654,[3] the State moved before the Justice of the Superior Court who had tried defendant that said Justice order Mr. Rand to prepare the transcript of the "evidence" to be utilized in the preparation of the appeal record. Defendant opposed the State's motion and, himself relying on 4 M.R.S.A. § 654, moved for a new trial.

At the hearing on the motions it was disclosed that Mr. Rand had already completed a transcript of the stenographic notes in question. No direct evidence was produced to identify the stenographic notes as the notes made by Mr. Cox of defendant's trial. However, the presiding Justice had made some notes of his own while he was presiding over the trial. Comparing his notes, and his recollection as refreshed by them, with the cover sheet and contents of the transcript prepared by Mr. Rand, the presiding Justice found that he was able to authenticate Mr. Rand's transcript. He, therefore, made findings of fact that:

(1)

"the tapes purport[ing] to be the stenotape notes of the Court Reporter present at the hearing, [Mr. Cox] . . . are

. . . the stenotapes prepared during the course of trial";

and (2)

". . . the transcript [made by Mr. Rand is] . . . an accurate record . . .."

Having made these findings, the presiding Justice then ordered that the transcript prepared by Mr. Rand serve as the transcript of the proceedings to be utilized to prepare the record for defendant's appeal; and he denied defendant's motion for a new trial.

I.

Defendant's first contention on appeal attacks the ruling made by the presiding Justice concerning the transcript prepared by Mr. Rand and the Justice's denial to defendant of a new trial.

■ Defendant contends: (1) since it is beyond dispute that Mr. Cox had died before he could append *his personal* certificate that

"the report *furnished by him* is a correct transcript of *his* stenographic notes of the testimony and proceedings . . ." (emphasis supplied)

of defendant's trial for "escape", as this subject is dealt with in 4 M.R.S.A. § 653,[4] the presiding justice lacked authority under 4 M.R.S.A. § 654 to order that the transcript prepared by Mr. Rand be utilized in the preparation of the record on appeal;

---

3. 4 M.R.S.A. § 654 provides:
"When in any criminal case any material part of a transcript of the evidence taken by the Official Court Reporter cannot be obtained because of his death or disability, the justice who presided at the trial of the case shall on motion, after notice and hearing, if it is evident that the lack of such transcript prejudices the respondent in prosecuting his exceptions or appeal, set aside any verdict rendered in the case and grant a new trial at any time within one year after it was returned."

4. 4 M.R.S.A. § 653 provides:
"In all cases coming before the law court from the Supreme Judicial Court or from the Superior Court in which a copy of the evidence is required by statute, rule of court or order of the presiding justice, a certificate signed by the Official Court Reporter, stating that the report furnished by him is a correct transcript of his stenographic notes of the testimony and proceedings at the trial of the cause, shall be a sufficient authentication thereof without the signature of the presiding justice."

(2), therefore, the presiding Justice should have decided that under 4 M.R.S.A. § 654

". . . a transcript of the evidence taken by the Official Court Reporter cannot be obtained because of his death . . .";

and (3) since it is here beyond question that defendant would be prejudiced on appeal by lack of a transcript of the proceedings of his trial, the presiding Justice erroneously denied defendant's motion for a new trial.

Defendant's position is untenable. It misreads the import of 4 M.R.S.A. § 653 and, hence, wrongly interprets 4 M.R.S.A. § 654 to signify that if the Official Court Reporter who made the original stenographic notes of defendant's trial is not alive to append his *personal* authenticating certificate, *ipso facto*

". . . a transcript of the evidence taken by the Official Court Reporter cannot be obtained . . .."

The text of 4 M.R.S.A. § 653 concerns only that which may be

". . . a *sufficient* authentication . . . without the signature of the presiding justice." (emphasis supplied)

Defendant commits a non-sequitur insofar as he seeks to assign to the *authorization* in 4 M.R.S.A. § 653 of a *sufficient* authenticating condition the legal effect of a *mandate* of an *exclusively necessary* condition of authenticity.

Defendant is also in error when he suggests that Hills v. Paul, 116 Me. 12, 99 A. 719 (1917) indicates that this Court had interpreted the then counterpart of 4 M.R.S.A. § 653 (P.L.1913, Chapter 103) to make indispensable the *personal* certification of the Official Court Reporter who had "taken" the proceeding. In Hills v. Paul this Court was concerned with a particular certificate which happened to be a personal certificate of the Official Court Reporter who had "taken" the cause at issue. The Court's pronouncement of the in-adequacy of the language of the *particular* certificate then before it, as claimed in the *individual instance* to constitute a "sufficient" authentication under the statute, was neither a decision, nor intimation, that the *personal* certificate of the Official Court Reporter who had "taken" a given proceeding is a *universally required* authenticating condition.

As to the text of 4 M.R.S.A. § 654 itself, one of its stated prerequisites of defendant's entitlement to a new trial—that ". . . a transcript . . . cannot be obtained . . .."—is inoperative in the present context. Here, the pragmatic reality is that a transcript *can be obtained* since it is fully established that another Official Court Reporter is able to read the stenographic notes of the Official Court Reporter who had "taken" the proceedings at defendant's trial.

We find support for this conclusion in the interpretation officially suggested concerning the scope of Rule 59(f) M.R.C.P. which became effective on September 18, 1961 as an amendment to the Maine Rules of Civil Procedure. Relative to the matter now under discussion, the language of Rule 59(f) is identical to the wording of 4 M.R.S.A. § 654. In the "Explanation of Amendments" the following statement to Rule 59(f) appears:

"If another court reporter can transcribe the stenographic notes of the deceased or disabled court reporter, a new trial under Rule 59(f) is not available." 2 F. McK. & W., Maine Civil Practice 2d 57.

We now decide that this correctly states the law for criminal cases under 4 M.R.S. A. § 654.

The presiding Justice was, therefore, correct in conducting an evidentiary proceeding to ascertain whether, notwithstanding the death of Mr. Cox before he had prepared a transcript of his own stenographic notes of defendant's trial, another Official Court Reporter was able to read Mr. Cox's notes and produce from them an

unprejudicially accurate transcript of the proceedings in said cause.

■ The evidence presented amply supported the conclusions of the presiding Justice that (1) the stenographic notes which had been delivered to Mr. Rand were the stenographic notes made by Mr. Cox of defendant's trial; (2) Mr. Rand's transcript from his reading of those stenographic notes was a record of the entirety of the proceedings at defendant's trial and was sufficiently accurate, without prejudice to defendant's rights on appeal, to be used in the preparation of the record on appeal; (3) thus, the underlying premise of defendant's demand for a new trial that

". . . a transcript of the evidence taken by the Official Court Reporter cannot be obtained because of his death . . ."

was in fact untrue; and (4), therefore, defendant's motion for a new trial must be denied.

Defendant's first point on appeal is rejected.

## II.

One other point of appeal raised by defendant concerns the failure of the evidence to support allegations of the indictment that defendant's "escape" from the Penobscot County Jail was from a commitment for defendant's " . . . failure to provide bail . . . " as fixed by the presiding Justice after he had found defendant guilty. Defendant claims that such failure of the State's proof requires reversal of the judgment of conviction.

The contention is without merit.

■ The essential elements of the crime of "escape" are: (1) the intentional unauthorized departure (2) from lawful detention pursuant to lawful authority (3) for a criminal offense. State v. Morton, Me., 293 A.2d 775 (1972); State v. Campbell, Me., 314 A.2d 398 (1974); State v. Holbrook, Me., 318 A.2d 62 (1974).

■ The instant indictment addresses these essential elements by its allegations that when defendant did " . . . escape and go" from the Penobscot County Jail, he was then in confinement, having been committed to await sentence after he had

" . . . been found guilty of the crime of being an accessory before the fact to robbery . . . ."

Since such allegations sufficiently charge a detention under lawful authority, Smith v. State, 145 Me. 313, 75 A.2d 538 (1950); Boyce v. State, Me., 250 A.2d 200 (1969), it was unnecessary that the indictment further allege that the presiding Justice, after having convicted defendant, had "set bail" and defendant failed " . . . to provide bail as established . . . ."

Moreover, the inclusion of these superfluous allegations, and the State's failure to prove them, did not contradict, or otherwise impair, the existence of any of the essential elements constituting the crime of "escape"—otherwise adequately alleged and proved against defendant. Even if we assume, arguendo, that it was procedurally necessary for the presiding Justice, after defendant's conviction of being an accessory before the fact to a robbery, to fix bail by new affirmative judicial action, and the presiding Justice had omitted so to act, defendant's detention in the Penobscot County Jail was, for the purposes of evaluating whether defendant had committed the crime of "escape", a detention under lawful authority. Such was the legal effect since defendant, in any event, had no right to resort to self-help as the method to contest procedural irregularities incident to his commitment. State v. Morton, Me., 293 A.2d 775 (1972); Collins v. State, Me., 262 A.2d 443 (1970); Wark v. State, Me., 266 A.2d 62 (1970); Chapman v. State, Me., 250 A.2d 696 (1969); Hamner v. State, Me., 223 A.2d 532 (1966).

The allegations of the indictment concerning bail were thus superfluous allegations which, even if unproved by the State, did not negate that defendant had commit-

ted the crime of "escape" (as otherwise adequately alleged and proved). As such, they were harmless surplusage which, proved or unproved, cannot affect the validity of the judgment of conviction. State v. Campbell, supra; Eaton v. State, Me., 302 A.2d 588 (1973); State v. Mihill, Me., 299 A.2d 557 (1973).

The entry is:

Appeal denied.

All Justices concurring.