**STATE of Maine**

v.

**David G. FLEMMING.**

Supreme Judicial Court of Maine.

Sept. 7, 1977.

---

3. *See* 14 M.R.S.A. § 156 (Comparative Negligence Act).

David M. Cox, Dist. Atty., Paul W. Chaiken, Asst. Dist. Atty., Bangor, for plaintiff.

Paine, Lynch & Weatherbee by Errol K. Paine, Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

POMEROY, Justice.

Does a person commit the crime of escape (former 17 M.R.S.A. § 1405) when he fails to return from a furlough from a mental health institution where he was committed upon a finding that he was not guilty of a felony by reason of mental disease or defect? That is the issue squarely presented in this case.

David Flemming, the appellee, was found not guilty by reason of mental disease or defect of felonious homicide punishable as murder. As is required by 15 M.R.S.A. § 103 he was committed to the Bangor Mental Health Institute. After failing to return to the institute from a furlough, he was charged with the crime of escape. Upon a proper motion, the indictment charging escape was dismissed for failure to state a crime cognizable under the laws of Maine.

The state seasonably appealed.

We sustain the appeal.

These facts are undisputed: (1) Appellee was confined in a mental health institution under a lawful order of the Superior Court; (2) this order resulted after a finding that he was not guilty of *"murder"* by reason of mental disease or defect; (3) he did not return to the institution from a 14-day furlough; (4) his absence from the institution was unauthorized.

The statute he is alleged to have violated read in part as follows:

"Whoever, being *lawfully detained* in any jail or *other place of confinement,* except the State Prison, breaks or escapes therefrom, or attempts to do so, shall be punished . . .. The sentence to such imprisonment shall not be concurrent with any other sentence then being served or thereafter to be imposed upon such escapee. . . ." [Former 17 M.R.S.A. § 1405] P.L. 1963, c. 77 (Emphasis supplied.)

The predecessor of former 17 M.R.S.A. § 1405 was first enacted in 1915. P.L. 1915, c. 136. The statute as originally enacted specifically required that the confinement be for a criminal offense. The statute in pertinent part read:

"Whoever, being lawfully detained for any criminal offense, in any jail or other place of confinement . . . shall be punished . . .." P.L. 1915, c. 136.

In *Smith v. State,* 145 Me. 313, 75 A.2d 538 (1950), this court declared that one of the elements of the crime of escape, as the statute was then written, was that the detention from which the prisoner escaped be for a criminal offense. The court specifically perceived the purpose of the statute as providing

"for the punishment of those who, having been convicted of crime, escape from jail or other place of detention . . . before or after sentence." 145 Me. at 327, 75 A.2d at 545.

■ The "escape statute" was amended in 1951 resulting in the deletion of the requirement that the detainment be for a criminal offense. P.L. 1951, c. 3. Subsequent to this amendment, the court, in *State v. Morton,* Me., 293 A.2d 775 (1972), emphasized that the focus now centers on the *lawfulness* of the detention, not the reason behind the detention. *See id.,* at 776.

In 1950 the court perceived the purpose of this statute as providing punishment for those individuals who, having been convicted of a crime and subsequently detained, escape from such detention. *Smith v. State,* supra, 145 Me. at 327, 75 A.2d at 545.

■ In 1951 the legislature eliminated the need to focus on the reason for the detainment. P.L. 1951, c. 3. Though there is no legislative history to guide us, we perceive the purpose of the amendment to expand the scope of the statute to include any individual lawfully detained, be the detention criminal or essentially civil in nature.[1]

As this court said in *Hamner v. State,* Me., 223 A.2d 532, 535 (1966):

---

1. In the instant case, the appellee's confinement was essentially civil in nature. Confinement as the result of a verdict of not guilty by reason of mental disease or defect is not punitive in nature. *See Chase v. Kearns,* Me., 278 A.2d 132, 138 (1971).

"It [the legislature] proceeded from the theory that all should yield obedience to lawful authority."

■ To escape from lawful confinement in a mental institution after a finding of not guilty by reason of mental disease or defect of the commission of a felony is an evil to be avoided, not merely because of the threat of violence but also because the judicially sanctioned control of such person is frustrated thereby. The focus is not only on the actual restraint on one's freedom but also on the effect that flight will have on the exercise of judicial authority. *See In Re State in Interest of M.S.*, 129 N.J.Super. 61, 322 A.2d 202 (1974), and cases cited therein.

■ The second issue which we must address is whether the phrase "other place of confinement" would include confinement in a mental health facility. A basic tenet of statutory construction is that words are to be given their ordinary meaning. The statute in question speaks of detainment in a place of confinement. To "detain" is "to hold or keep in or as if in custody . ." Webster's International Dictionary (3rd ed. 1971). "Confinement" is defined as "the act of confining (to hold within bounds: restrain from exceeding boundaries) or the state of being confined: restraint within limits." *Id.*

■ Neither word in its ordinary usage connotes a punitive or penal quality. Giving the words of the statute their plain meaning, there is nothing to suggest that an escape need be from a penal institution to be criminal. As long as an individual is held, subject to judicially ordered restraint on his movement, the statute's plain meaning does not limit the place of such confinement to a penal institution alone.

■ In short, an escape by an individual confined in a mental health institution as the result of being acquitted of a crime by reason of mental disease or defect is a crime in the State of Maine. Former 17 M.R.S.A. § 1405.

The justice below erred in dismissing the indictment for failure to state a crime cognizable in the State of Maine.

The entry must be:

Appeal sustained.

The case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ., concurring.

DUFRESNE, C. J., concurring in result.

DUFRESNE, Chief Justice (concurring in result).

David G. Flemming, the defendant, as appears from the caption of the indictment found by the Grand Jury of Penobscot County, is charged with escape in violation of 17 M.R.S.A., § 1405,[1] a statutory felony.

The indictment recites as the factual basis of the alleged statutory escape that "on or about the 15th day of August 1975, in the County of Penobscot, State of Maine, DAVID G. FLEMMING, after having been found not guilty by reason of mental disease or defect of the offense of murder, and in pursuance thereof having been committed on the order of Justice James L. Reid at the May Term, 1974, of the Superior Court of Aroostook County to the custody of the Commissioner of Mental Health and Corrections to be placed in an appropriate institution for the mentally ill or the mentally retarded for care and treatment in accordance with Title 15, M.R.S.A., Section 103, dated May 2, 1974, and in accordance with said order said DAVID G. FLEMMING having been placed in the custody of the Superintendent of the Bangor Mental

---

1. 17 M.R.S.A., § 1405. Escapes from jail

Whoever, being lawfully detained in any jail or other place of confinement, except the State Prison, breaks or escapes therefrom, or attempts to do so, shall be punished by imprisonment for not more than 7 years. The sentence to such imprisonment shall not be concurrent with any other sentence then being served or thereafter to be imposed upon such escapee. . . ."

Health Institute by order of said commissioner dated May 2, 1974, which order was then and there in full force and effect, and said DAVID G. FLEMMING having been granted a furlough on August 1, 1975 by one having custody of him, to wit, Joseph Saxl, Superintendent of the Bangor Mental Health Institute, said furlough to commence on August 1, 1975 at said Bangor Mental Health Institute at Bangor and terminate at said Bangor Mental Health Institute on August 14, 1975, whereupon the said DAVID G. FLEMMING did then and there willfully and unlawfully fail to return to the custody of the Superintendent of the Bangor Mental Health Institute and from and out of said custody of the Superintendent of the Bangor Mental Health Institute did escape and go at large."

A Justice of the Superior Court, upon the defendant's motion to dismiss the indictment on the ground that it fails to state a crime cognizable under the laws of the State of Maine, ordered the indictment dismissed, from which order the State has appealed to this Court.

I agree with the majority that the action of the Court below in granting the defendant's motion to dismiss the indictment was incorrect, but, with due respect, I disagree with the majority's conclusion that the failure of an inmate of the Bangor Mental Health Institute, committed to said institution by court order following a finding of not guilty of the offense of murder by reason of mental disease or defect, to return to the custody of the Superintendent of said institution while on authorized furlough is a crime within the scope of 17 M.R.S.A., § 1405, which prohibits escapes from lawful detention "in any jail or other

place of confinement, except the State Prison."

The case of *In Re State In Interest of M.S.*, 1974, 129 N.J.Super. 61, 322 A.2d 202, cited by the majority, in which a New Jersey escape statute was held to comprise unsanctioned absences of a juvenile from the juvenile institution where she was placed by court order, is readily distinguishable from the instant case. In the New Jersey case, the Court was interpreting *explicit* legislation which provided that

> "*any person* imprisoned or *detained in a place of confinement*, or *being in the lawful custody or control* of a penal or correctional institution or *of an officer or other person*, upon any charge, indictment, conviction or sentence for any crime, or *upon any writ or process in a civil action or proceeding*, or to await extradition, *who* by force or fraud escapes or attempts to escape from such place of confinement or from such custody or control, or *leaves the building or grounds of his place of confinement without the consent of the officer in charge*, is guilty of a misdemeanor." (Emphasis added).

Our statute, 17 M.R.S.A., § 1405, has no express reference whatsoever to a breach of custodial detention under judicial process of a civil nature, such as the New Jersey statute embodied, to support a legislative intent to criminalize violation of noncriminal judicial orders to the extent of repealing the common law misdemeanor aspect of escapes from civil commitment and substituting therefor the broad concept that all escapes from lawful custody are felonies.[2]

Similarly, in *Zimmer v. State*, 1969, Ind., 247 N.E.2d 195, the Indiana Court held that the defendant's escape from the Central

---

**2.** I have in mind that in *Chase v. Kearns*, 1971, Me., 278 A.2d 132, at 138, we characterized the commitment to a mental institution of a person accused of crime after a verdict of not guilty by reason of mental disease or defect as a criminal commitment. Such label is at best ambiguous for denoting the action of a criminal court in relation to an essentially civil matter. Indeed, the commitment of the criminally innocent defendant must be viewed rather as a civil commitment by a court exercising criminal jurisdic-

tion in the sequential disposition of a criminal case. I would say that such commitment is quasi-criminal only, having its origin in a criminal court, but performing a truly civil function. I do agree that such quasi-criminal commitment is a sufficient distinction as stated in *Chase v. Kearns* to support the conclusion that our statutory automatic commitment process is within the constitutional requirements of equal protection.

State Hospital to which the defendant had been transferred for treatment from the Indiana Women's Prison by authority of the Deputy Commissioner of Mental Health was an escape from the prison since the statute specifically so provided.

The instant case is also distinguishable from the case of *Boyce v. State*, 1969, Me., 250 A.2d 200, and similar cases, where the statute, 34 M.R.S.A., § 5, expressly provided that

"[a]ny prisoner or inmate who escapes from any assignments described in this section, or any other assignment beyond the walls of the State Prison or off the grounds of the Reformatory for Men shall be guilty of escape under this Title [34 M.R.S.A., §§ 710 and 807] or Title 17, section 1405."

In so providing, the Legislature, so our Court said, merely gave recognition to the common law principle that a prisoner or inmate who escapes while assigned or employed outside the walls or grounds of the institution of confinement is deemed to have escaped from the institution itself. Id. at 202.

Notice should be taken that the Legislature in 34 M.R.S.A., § 5 specifically stated that such escapes originating outside the walls of the State Prison or the grounds of the Reformatory for Men could be prosecuted as escapes within the scope of 17 M.R.S.A., § 1405 which provided lesser penalties than 34 M.R.S.A., § 710 (escape from State Prison) and 34 M.R.S.A., § 807 (escape from the Reformatory for Men). The Legislature did not similarly legislate in the case of inmates of the State Hospital committed thereto following acquittal of a criminal charge by reason of mental disease or defect.

The present case is also distinguishable from that of *Baledge v. State*, 1971, Okl.Cr., 479 P.2d 602, in which the escape of an inmate of the state penitentiary from the University Hospital in Oklahoma County where the inmate had been transported for medical treatment was ruled an escape from the penitentiary located in Pittsburg County on the basis that at all times he was in constructive custody of the penal institution.

In *Smith, Petr. v. State of Maine*, 1950, 145 Me. 313, 318, 75 A.2d 538, 541, this Court said of 17 M.R.S.A., § 1405 as it then provided that

"[t]he effect of the statute is not the creation of a new and distinct offense. It merely provides a specific penalty for certain common law escapes which are brought within its terms by the other requirements as to the place from which the escape is made and the cause of the detention. It makes certain escapes felonies which were misdemeanors."

Thus, our statutory law, prior to the adoption of our new Criminal Code effective May 1, 1976 was merely declaratory of the common law except as the statutes modified it in relation to the potential punishment to be incurred in escapes from penal institutions depending upon the place from which the escape was made or the reason for the detention.

Such was the legislative pattern from the very first act which provided penalties for escapes from penal institutions. Legislation relating to punishment of escapes by convicts sentenced to state prison for life or for a limited term was first enacted in 1824. (See 1824, P.L. 262, §§ 12 and 13). This statute was later expanded to include, as provided in 34 M.R.S.A., § 710 in effect at the time of the alleged escape involved in the instant case, escapes by convicts transferred to the State Prison from the Reformatory for Men under 34 M.R.S.A., § 808A; escapes by persons committed to jail who are potentially subject to imprisonment in the State Prison while awaiting decision by the Supreme Judicial Court on their appeal, or grand jury action after a finding of probable cause or trial after indictment and who are transferred to the State Prison for safekeeping when deemed dangerous and liable to attempt to escape from jail. This expansion of section 710 was made by amendment in 1959. See Public Laws, 1959, c. 242, s. 6.

On a parallel course, our statutes provided for the commitment either to prison or

to the insane hospital of persons indicted for crime and acquitted by the jury by reason of insanity or mental derangement or such persons against whom the grand jury for such reason omitted to find an indictment following an arrest for crime. See Public Laws 1821, c. 58, §§ 1 and 2— Revised Statutes, 1840, c. 173, § 1.[3] The commitment of such persons was not for the purpose of punishment for crime, but, rather, to have such persons remain there "until restored to his [their] right mind, or otherwise delivered by due course of law." No provision was ever expressly enacted to bring escapes by such persons either from state prison or from the insane hospital within the scope of the statutory provisions relating to escapes from state prison as was expressly made for convicts transferred to the state prison from the reformatory for men or jail as expressly provided in Title 34, section 710.

The Legislature, in a consistent approach to penalties for escapes, at different times established specific punishments to be, incurred by persons escaping from penal institutions other than the state prison.

Our present statute, 17 M.R.S.A., § 1405, was first enacted by Public Laws, 1915, c. 186 and provided that

"Whoever, being lawfully detained *for any criminal offense*, in any jail or other place of confinement, breaks or escapes therefrom, or forcibly attempts to do so, shall be punished, if such prisoner was in custody for a felony, by imprisonment for not less than one, nor more than seven years; and if for any other offense, by imprisonment for not exceeding one year; such imprisonment shall commence after the completion of any sentence imposed for the crime for which he was then in custody." (Emphasis supplied)

In the revision of 1916, the Commissioner on Revision of the Statutes inserted in the reference statute the exception clause— "except the state prison,"—so that in the Revised Statutes of 1916, chapter 124, section 16 the provision read: "Whoever, being lawfully detained for any criminal offense, in any jail or other place of confinement, except the state prison, breaks or escapes therefrom . . . ˙etc."

Notwithstanding the apparent broad reach of the 1915 legislation and chapter 124, section 16 of the Revised Statutes of 1916 (which by subsequent amendment became 17 M.R.S.A., § 1405 with which we are here involved), the Legislature thereafter enacted specific legislation providing particular penalties for escapes from other penal institutions.

By Public Laws, 1921, chapter 12, the Legislature provided the following punishment for escapes from the Reformatory for Women:

"Any woman lawfully committed to said reformatory who escapes therefrom, or who violates the condition of any permit by which she may have been allowed to be at liberty under the preceding section, shall be punished by imprisonment in said reformatory for not exceeding one year to commencé at the expiration of the term for which she was originally committed."

This statute was expanded subsequently so that, under 34 M.R.S.A., § 859 in force at the time of the instant alleged escape, prisoners of the Women's Correctional Center (formerly the Reformatory for Women) upon conviction for escape from that institution, if committed to the Center by reason of a State Prison sentence, were expressly made subject to a sentence to the State Prison for an additional term of not

---

**3.** The present statute, the scope of which is not so broad as the original one, reads as follows:

15 M.R.S.A., § 103 Commitment of persons acquitted on basis of mental disease or defect

"When a respondent is acquitted, by reason of mental disease or mental defect excluding responsibility, the verdict and judgment shall so state. In such case the court shall order such person committed to the custody of the

Commissioner of Mental Health and Corrections to be placed in an appropriate institution for the mentally ill or the mentally retarded for care and treatment. Upon placement in such appropriate institution and in the event of transfer from one such institution to another of persons committed under this section, notice thereof shall be given by the commissioner to ˙the committing court."

less than one year nor more than 5 years, while inmates of the Center committed to that institution for the commission of offenses punishable by incarceration in the county jail for more than 6 months, including juveniles of the proper age committed to the Center under Title 15, section 2611, subsection 4, paragraph A–1 or Title 15, section 2719, were made subject to an additional term of confinement in the center. See Public Laws, 1967, c. 391, § 18 and Public Laws, 1971, c. 121, § 11 and c. 544, § 118–C.

Similarly, by Public Laws, 1921, chapter 21, the Legislature provided the following punishment for escapes from the Reformatory for Men:

"Any person lawfully committed to said reformatory who escapes therefrom, or who violates the condition of any permit by which he may have been allowed to be at liberty under the foregoing paragraph, shall be punished by imprisonment in said reformatory for not exceeding one year to commence at the expiration of the term for which he was originally committed."

This statute was expanded subsequently so that, under 34 M.R.S.A., § 807 in force at the time of the instant alleged escape, inmates of the Men's Correctional Center (formerly the Reformatory for Men), upon conviction for escape from that institution were expressly made subject to imprisonment in accordance with Title 17, section 1405 (the statute involved in the instant case), while a prisoner of the State Prison who had been transferred to the Men's Correctional Center pursuant to 34 M.R.S.A., § 705 and who escaped therefrom thereafter was made subject to imprisonment in accordance with Title 34, section 710. See Public Laws, 1969, chapter 541, effective January 27, 1970.

*Smith, Petr. v. State of Maine,* 1950, 145 Me. 313, 75 A.2d 538, construed 17 M.R.S.A., § 1405 as it appeared prior to its amendment in 1951 by Public Laws, 1951, c. 3. The statute then proscribed escapes by persons lawfully detained for a criminal offense in any jail or other place of confinement except the state prison. This Court held that an escape by a prisoner of the Cumberland County jail while held therein under commitment thereto for failure to recognize with sufficient sureties to answer to an indictment charging him with the commission of a felony after probable cause to charge him with such a criminal offense had been found, did not come within the statutory language of lawful detention "for a criminal offense."

The rationale of the Court was well expressed by Justice, later Chief Justice, Merrill in this fashion:

"While in a colloquial sense it may be said that one who is arrested on a charge of crime is arrested for a criminal offense and that one who is detained in jail to await trial for a criminal offense with which he is charged, or to answer to an indictment for a criminal offense if the same may be returned against him, is detained for a criminal offense, he is not in fact detained in jail *for the criminal offense* nor is he in fact in custody *for the crime.* In view of the fact that this statute categorically provides that the sentence for its violation shall commence 'after completion of any sentence imposed for the crime for which he was then in custody,' and in view of the fact that the statute provides for a maximum penalty of imprisonment for a term of seven years, thus changing a common law crime from a misdemeanor to a felony, we believe that the purpose of the act was to provide for the punishment of those who, having been convicted of crime, escape from jail or other place of detention, except the state prison, either before or after sentence. Had the legislature intended to include within the terms of the statute those charged with the commission of crime, or those committed in default of bail to await action by the grand jury, it could easily have employed apt language therefor." Id. 327, 75 A.2d 545.

In *Smith,* the Court applied the rule of strict construction of penal statutes, restating the language of *State v. Blaisdell,* 1919, 118 Me. 13, 14, 105 A. 359:

"The amendment enlarges the offense from a misdemeanor to a felony and was in force when the act complained of was committed. While the rule requiring strict construction of penal statutes was more rigorously applied in former times, when the number of capital offenses was more than one hundred and sixty, yet the rule still obtains, and is so well recognized that citation of authorities is unnecessary. And the rule is equally well established that 'the degree of strictness applied to the construction of a penal statute depends in great measure upon the severity of the statute.' Endlich on the Interpretation of Statutes, Sec. 334. As a corollary to this rule it follows that a statute declaring an act to be a felony calls for more strict construction than one which declares an act to be a misdemeanor."

The issue before the Court is, what was the effect of the amendment of 1951 (Public Laws 1951, c. 3) which merely expunged from the statute the words "for any criminal offense" which previously characterized the lawful detention in any jail or other place of confinement required to bring an escape within the statute for purposes of punishment.

In the absence of any history indicative of the precise legislative intent, it seems logical to believe that the Legislature's design was merely to remedy the legal flaw exposed by *Smith* which denied statutory inclusion of escapes for criminal offenses as that term was colloquially understood; in other words, the Legislature by deleting the words "for any criminal offense" merely desired to bring in within the statutory concept of escapes the unauthorized intentional departures from jail or other place of confinement of those prisoners accused of and detained on account of criminal charges but who had not as yet been tried and convicted. Where the amendment was passed at the very next Legislature following the decision in *Smith*, one would not expect, in the absence of legislative debate to the contrary, that our Legislators intended through this amendment, contrary to previous legislative pattern, to enact com-

prehensive legislation which would encompass all escapes from any place of confinement except the State Prison, including escapes from the Reformatory for Men or the Reformatory for Women, let alone such intentional unauthorized departures of inmates of penal institutions committed thereto for causes other than accusation or conviction of crime, or escapes from non-penal institutions such as mental hospitals.

The strict construction rule, still in effect in Maine, so requires. As stated in *Smith*, if the Legislature had intended to include within the terms of the amendment those acquitted of criminal charges by reason of mental disease or mental defect excluding responsibility, or for that matter any escaping inmate civilly committed to our mental institutions, "it could easily have employed apt language therefor."

Criminal statutes are to be strictly interpreted wherever possible in favor of the defendant, especially where substantial rights are involved, and should never be made to embrace any doubtful case. *State v. Granville*, 1975, Me., 336 A.2d 861; *Tuttle v. State*, 1962, 158 Me. 150, 180 A.2d 608, cert. den., 371 U.S. 879, 83 S.Ct. 151, 9 L.Ed.2d 116; *State v. Artus*, 1945, 141 Me. 347, 43 A.2d 924.

Under the strict construction rule, the courts have no right under the guise of interpreting the law to create a crime by inference or implication, and in a doubtful case should leave this chore to the constitutional body to whom such matters have been delegated by the people, i. e. the Legislature. See *State v. Peacock*, 1942, 138 Me. 339, 25 A.2d 491; *State v. Wallace*, 1906, 102 Me. 229, 66 A. 476.

A stricter adherence to the rule of strict construction is called for, where the act to be interpreted, if construed broadly, would make the prohibited conduct a felony rather than a misdemeanor, and, as in the instant case, would be in derogation of the common law. See *State v. Millett*, 1964, 160 Me. 357, 361, 203 A.2d 732, 734.

The application of a broad construction to 17 M.R.S.A., § 1405 to bring within the

statutory terms of lawful detention in any jail or other place of confinement the detention in a mental hospital of a person found innocent of crime by reason of mental disease or defect and committed thereto pursuant to 15 M.R.S.A., § 103 is an overruling of *Smith, Petr. v. State of Maine* without saying so and is contrary to the clear reaffirmance of *Smith* in relation to the continued viability of the strict construction rule as appears in decisions of this Court since the 1951 amendment. See *Tuttle, Petr. v. State of Maine*, supra, at page 153 of 158 Maine Reports, 180 A.2d 608; *State v. Millett*, supra, at page 361 of 160 Maine Reports, 203 A.2d 732.

Furthermore, in *State v. Heald*, 1974, Me., 322 A.2d 68, this Court in construing 17 M.R.S.A., § 1405 said, and I believe deliberately, that

> "[t]he essential elements of the crime of 'escape' are: (1) the intentional unauthorized departure (2) from lawful detention pursuant to lawful authority (3) *for a criminal offense.*" (Emphasis added)

In a case of some analogy to the facts surrounding Flemming's escape, the Court of Appeals of the District of Columbia Circuit concluded that the federal escape statute did not encompass an escape from Saint Elizabeths Hospital to which the defendant had been lawfully committed by order of court following his acquittal on felony charges by reason of insanity. *United States v. Powell*, 1974, 164 U.S.App.D.C. 104, 503 F.2d 195.

The majority's extension of the escape statute to cover intentional unauthorized departures by inmates of our mental institutions is also contrary to the obvious legislative pattern which has been to set the specific punishment for escapes from the several penal institutions and, when the Legislature wished to apply the punishment provided under 17 M.R.S.A., § 1405 to escapes from institutions other than "jails," it so stated expressly.

The Justice below, however, erred in dismissing the indictment, because it did charge the crime of escape at common law.

As stated in *Smith*, supra:

> "Any escape by a prisoner from lawful custody was an offense at common law. Except in those cases expressly provided for by statute, and those cases, if any, excluded by necessary implication by the terms of some statute, escapes which were crimes at the common law, are now common law crimes in this state. No penalty, however, is provided for common law criminal escapes as such. Except for escapes defined by statute and for which statutory penalties are provided, the punishment for criminal escapes is governed by the provisions of R. S. Chap. 136, Sec. 2 [15 M.R.S.A., § 1741 (1964)], which provides:
>
> 'When no punishment is provided by statute, a person convicted of an offense shall be punished by a fine of not more than $500, or by imprisonment for less than 1 year.' "

In Wharton's Criminal Law, Vol. III, Eleventh Ed., p. 2179, § 2004, it is stated:

> "[I]t is equally clear that it is a misdemeanor at common law to escape from any lawful imprisonment, whether on civil or criminal process," citing *Reg. v. Allan*, Car. & M. 295, 5 Jur. 296.

Cited also in support of the statement that at common law it is a misdemeanor to escape from any lawful restraint under civil process is the case of *State v. Murray*, 1838, 15 Me. 100, which seems to support such doctrine where a conspiracy to commit a prison breach was involved.

In *Commonwealth v. Barker*, 1882, 133 Mass. 399, the Massachusetts Court, also citing *State v. Murray*, supra, indicated that

> "[w]e are by no means prepared to assent to the proposition that breaking jail, by one confined on mesne process, was not an offense at common law."

As stated in *State v. Doud*, 1829, 7 Conn. 384 at 386:

> "The escape of a person lawfully arrested, by eluding the vigilance of his keepers, before he is put in hold or in prison, is an offence against public justice; and the party himself is punishable by fine and imprisonment. For however strong

the natural desire of liberty may be, *yet every man is bound to submit himself to the restraints of the law.*" (Emphasis supplied)

An escape by an inmate of a mental institution lawfully committed thereto by court order, like that of a prisoner held in jail on a criminal charge, cannot be viewed otherwise than an outrage to the dignity of the law and a public disrespect for the lawful authority by which he is detained. Such conduct constitutes a breach of the public peace, for it frustrates judicial process sanctioning control of the freedom of a person and is an affront to judicial authority and to the actual feelings and demands of the community. The common law casts a duty upon the lawfully committed inmate of a mental institution acquitted of crime by reason of mental disease or defect to yield obedience to lawful authority, especially in view of the State's special interest in the confinement of such people resulting from the fact that there has been a judicial determination that they have already endangered the public safety or have demonstrated a propensity toward criminal activity.

Thus, I concur in sustaining the appeal, but the entry should be:

Appeal sustained. Case remanded to the Superior Court for further proceedings, having in mind that the indictment charges only a common law escape, a misdemeanor.[4]

---

4. I recognize that the caption of the indictment expressly indicates that the Grand Jury intended to charge an escape for violation of 17 M.R.S.A., Section 1405. Under Rule 7(c), M.R. Crim.P., the indictment must state the official citation of the statute or other provision of law which the defendant is alleged therein to have violated, but the rule further provides that "[e]rror in the citation of a statute or its omission shall not be grounds for the dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

The matter being resolved prior to trial, no prejudice can result to the defendant.